UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM EDWARDS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | |
| Plaintiff, | CASE No.: |
| vs. | CLASS ACTION COMPLAINT |
| LIME ENERGY CO., JOHN O'ROURKE, DAVID ASPLUND, AND JEFFREY MISTARZ, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, William Edwards, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lime Energy Co. ("Lime Energy" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Lime Energy between May 13, 2010 and

July 17, 2012 (the "Class Period"), inclusive, seeking to recover damages caused by Defendants'

violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934

(the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the

Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R.

§240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of

the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15

U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts alleged herein, including the preparation

and dissemination of materially false and misleading information, occurred in substantial part in this

District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint,

Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the

facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference

herein, purchased Lime Energy common stock at artificially inflated prices during the Class Period

and has been damaged thereby.

2

7.      Defendant Lime Energy Co., a Delaware Corporation, provides clean energy solutions to the utilities, energy service companies, government entities, and commercial and industrial businesses.  Its services include upgrading facilities to have energy efficient lighting, energy efficient mechanical systems, water conservation, and on-site renewable energy. The company consults, develops, and manages the process of constructing clean energy solutions for customers. During the Class Period the Company's stock was listed on the NASDAQ under ticker "LIME."

8.      Throughout the majority of the Class Period the Company was headquartered in Elk Grove Village, Illinois.

9.      Defendant John O'Rourke ("O'Rourke") was and is the Company's President and CEO since May 23, 2011.

10.      Defendant David Asplund ("Asplund") was the Company's CEO until May 23, 2011, at which time he was appointed Executive Chairman of the Board of Lime Energy.

11.      Defendant Jeffrey Mistarz ("Mistarz") was, at all relevant times, Executive Vice President, Chief Financial Officer, Treasurer, Corporate Secretary, Principal Financial Officer and Principal Accounting Officer of Lime Energy.

12.      O'Rourke, Asplund, and Mistarz are collectively referred to hereinafter as the "Individual Defendants."

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

13.      Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Lime Energy during the Class Period and who were damaged thereby.  Excluded

from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

14.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Lime Energy's common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by Lime Energy or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

15.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

16.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

17.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lime Energy; and

(c) to what extent the members of the Class have sustained damages, and the proper measure of damages.

18.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

19.     The Class Period begins on May 13, 2010. On May 13, 2010, Lime Energy issued a press release announcing its financial results for the first quarter of 2010; the period ended March 31, 2010.  For the quarter, the Company reported revenues of $11.8 million and GAAP net income loss of $4.7 million, or $0.20 per diluted share.

20.      Defendant Lime Energy, commenting on the results, stated, in pertinent part, as follows:

We remain optimistic on the growth opportunities in each of our markets and continue to expect our total revenue for 2010 to be between $95 million and $100 million with an adjusted EBITDA loss of between $3 million and $4 million. Our backlog remains at $94 million which is the largest and most diversified backlog in our history. We also continue to expect our revenue to be heavily weighted toward the third and fourth quarters due to the combination of the expected timing of public sector projects, the continuing ramp up of our utility program management business and the typical seasonal pattern of revenue for our C&I business. We therefore expect second quarter revenue to be between $16 million and $16.5 million.

21.     That same day, the Company filed a 10-Q with the SEC repeating the earnings results from the press release.  The 10-Q Form was signed by Defendants, Asplund and Mistarz.

22.     In reaction to the Company's first quarter financial results, on May 14, 2010, shares of the Company's stock rose $0.43 per share, or 11.5%, ending up closing at $3.87 per share.

23.     On August 10, 2010, Lime Energy issued a press release announcing its financial results for the second quarter of 2010; the period ended June 30, 2010.  For the quarter, the Company reported revenues of $17.508 million and a GAAP net loss of $2.028 million, or $0.09 per share. Moreover, the Company confirmed its guidance for the year ending December 31, 2010.

24.     Defendant, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> We continue to expect our total revenue for 2010 to be between $95 million and $100 million with an adjusted EBITDA loss of between $3 million and $4 million. Our current backlog is at $88 million. Our revenue is expected to be heavily weighted in the second half of this year due to the combination of the expected timing of public sector projects, the continuing ramp up of our utility program management business and the typical seasonal pattern of revenue for our C&I business. We therefore expect third quarter revenue to be between $27 million and $29 million.

25.     That same day, the Company filed a 10-Q with the SEC repeating the earnings results from the press release.  The 10-Q Form was signed by Defendants, Asplund and Mistarz.

26.     On November 8, 2010, Lime Energy issued a press release announcing its financial results for the third quarter of 2010; the period ended September 30, 2010.  For the quarter, the Company reported revenues of $28.1 million and a GAAP net loss of $382 thousand, or $0.02 per diluted share. Moreover, the Company once again confirmed its guidance for the year ending December 31, 2010.

27.     Defendant, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> We continue to expect our total revenue for 2010 to be between $95 million and $100 million with an adjusted EBITDA loss of between $3 million and $4 million. Our current backlog is at $84 million.

28.     That same day, the Company filed a 10-Q with the SEC repeating the earnings results from the press release. The 10-Q Form was signed by Defendants, Asplund and Mistarz.

29.     On March 10, 2011, Lime Energy issued a press release announcing its financial results for the fourth quarter of 2010, the period ended December 31, 2010, as well as the twelve-month period ended December 31, 2010. For the quarter, the Company reported revenues of $38.3 million and GAAP net income of $1.9 million, or $0.08 per share. For the year, the Company reported $95.7 million in revenue and a net loss of $5.2 million, or $0.22 per share.

30.     Defendant Asplund and Lime Energy Co., commenting on the results, stated, in pertinent part, as follows:

> "The fourth quarter of 2010 highlights the 'Power of the Platform. It illustrates what we have been saying for a while, that the key to us generating sustained profitability is to deliver strong revenue growth, hold or improve our gross margins and control the growth of our SG&A….Since re-making the company in 2006, we have grown revenue three times faster than SG&A with revenue having grown at a 104.3% compounded annual growth rate (CAGR) while SG&A increased at a 29.9% CAGR."

> We currently expect our total revenue for 2011 to be between $122 million and $128 million with adjusted EBITDA of between $1.0 million and $2.0 million. We expect our first quarter revenue to be between $16.0 million and $17.5 million.

31.     That same day, the Company filed with the SEC a 10-K repeating the earnings results from the press release. The 10-K was signed by Defendants, Asplund and Mistarz.

32.     On May 12, 2011, Lime Energy issued a press release announcing its financial results for the first quarter of 2011; the period ended March 31, 2011.  For the quarter, the Company reported revenues of $19 million and a net loss of $3.68 million, or $0.15 per diluted share.

33.     Defendant, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> We expect to continue to experience higher revenue for the balance of the year, relative to 2010 levels. Our revenue is also expected to continue to be seasonal, with revenue continuing to build throughout the year. We currently have about $126 million in backlog, and expect our second quarter revenue to be between $24 million and $26 million.

34.     That same day, the Company filed with the SEC a 10-Q repeating the earnings results from the press release.  The 10-Q was signed by Defendants, Asplund and Mistarz.

35.     On August 8, 2011 Lime Energy issued a press release announcing its financial results for the second quarter of 2011, the period ended June 30, 2011.  For the quarter, the Company reported revenues of $24.26 million and a net loss of $3.548 million, or $0.15 per share. Moreover, the Company confirmed its guidance for the year ending December 31, 2011.

36.     Defendant, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> We expect to continue to experience higher revenue for the balance of the year, relative to 2010 levels.  Our revenue is also expected to continue to be seasonal, with revenue continuing to build throughout the year.  We currently have about $190 million in backlog, and expect our third quarter revenue to be between $30 million and $35 million.  Our backlog includes signed and awarded contracts, including multi-year contracts under utility programs.

37.     That same day, the Company filed with the SEC a 10-Q repeating the earnings results from the press release.  The 10-Q Form was signed by Defendants O'Rourke and Mistarz.

38.     On November 8, 2011, Lime Energy issued a press release announcing its financial results for the third quarter of 2011; the period ended September 30, 2011.  For the quarter, the Company reported revenues of $32.2 million and net income of $359 thousand, or $0.02 per diluted share.  Moreover, the Company once again confirmed its guidance for the year ending December 31, 2011.

39.     Defendant, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> We expect our fourth quarter to be a record quarter in terms of revenue and earnings, with revenue projected to be between $47 million and $53 million. We currently have about $227 million in backlog, of which approximately $80 million will be converted to revenue during 2012. Our backlog includes signed and awarded contracts, including multi-year contracts under utility programs and $31 million representing 20 years of revenue under contracts for the sale of output from our Zemel Road project.

40.     That same day, the Company filed with the SEC a 10-Q repeating the earnings results from the press release.  The 10-Q Form was signed by Defendants O'Rourke and Mistarz.

41.     On March 8, 2012 Lime Energy issued a press release announcing its financial results for the fourth quarter of 2011, the period ended December 31, 2011, as well as the twelve-month period ended December 31, 2011.  For the quarter, the Company reported revenues of $18.3 million and a net loss of $4.57 million, or $0.19 per share.  For the year, the Company reported $120.1 million in revenue and a net loss of $11.6 million, or $0.49 per share.

42.     Defendant O'Rourke and Lime Energy Co., commenting on the results, stated, in pertinent part, as follows:

> "Our businesses focused on the utility, public sector and federal markets performed very well during 2011, increasing their combined revenue by 42% and expanding their gross profit margins… we expect continued growth in revenue and profitability from our other businesses in 2012."

> We currently have about $234 million in backlog, of which we expect $116 million to convert to revenue during 2012. We define backlog as projects which we have under formal binding contract or projects which have either been awarded to Lime or our ESCO customers. We currently expect our total revenue for 2012 to be between $143 million and $152 million with adjusted EBITDA of between $4 million and $5 million. We expect our first quarter revenue to be between $17 million and $20 million.

43.     That same day, the Company filed with the SEC a 10-K epeating the earnings results from the press release. The 10-K Form was signed by Defendants O'Rourke, Asplund, and Mistarz.

44.     On May 12, 2012, Lime Energy issued a press release announcing its financial results for the first quarter of 2012; the period ended March 31, 2012. For the quarter, the Company reported revenues of $18.3 million and a net loss of $4.6 million, or $0.19 per diluted share. Moreover, the Company confirmed its guidance for the year ending December 31, 2012. The 10-Q for this period was filed with the SEC on May 10, 2012, and was signed by Defendants O'Rourke and Mistarz.

45.     Defendant O'Rourke, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> "The first quarter results were in line with our expectations for what has traditionally been our seasonally slowest quarter of the year," The quarter's results included a 16% year-over-year increase in our core energy efficiency business, led by strong first quarter growth in our utility market segment… We are confident in our trajectory and expect a particularly strong second half as these utility programs ramp and further contribute to this year's expected results"

> We expect our second quarter revenue projected to be between $24 million and $28 million. We currently have about $224 million in backlog, of which approximately $106 million is expected to convert to revenue during the balance of 2012. Our backlog includes signed and awarded contracts, including multi-year contracts under utility programs and power purchase agreements. We are reiterating our revenue guidance of $143 million for the year.

46.     The above statements were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a)     that the Company was misreporting revenue since 2010 nonexistent revenue;

(b)     improperly reporting revenue too early;  and

(c)     as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company and its prospects.

### The Truth Comes to Light

47.     On July 17, 2012, the Company issued a press release announcing that it had misreported revenue over the last few years, dating back to 2010.  More specifically, the press release stated that:

> The Audit Committee of the Board of Directors of Lime Energy Co. (the "Company") determined that the Company's consolidated financial statements on Form 10-K for the periods ended December 31, 2010 and December 31, 2011 and quarterly report on Form 10-Q for the period ended March 31, 2012 (the "affected financial statements") may no longer be relied upon.  The Audit Committee made that determination based on the results of a partial internal review conducted by the Company's management which was concluded on Friday, July 13, 2012. In some cases, it appears that non-existent revenue may have been recorded.  In other cases, it appears that revenue may have been recorded earlier than it should have been.

48.     In reaction to the Company's statement, July 17, 2012, shares of the Company's stock fell $0.91 per share, or 45%, to close at $1.12 per share.

### Applicability of Presumption of Reliance:
### Fraud-on-the-Market Doctrine

49.     At all relevant times, the market for Lime Energy common stock was an efficient market for the following reasons, among others:

(a)    Lime Energy's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    During the class period, on average, over hundreds of thousands of shares of Lime Energy stock were traded on a weekly basis, demonstrating a very active and broad market for Lime Energy and permitting a very strong presumption of an efficient market;

(c)    Lime Energy regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)    Lime Energy was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(e)    Numerous NASD member firms were active market-makers in Lime Energy stock at all times during the Class Period; and

(f)    Unexpected material news about Lime Energy was rapidly reflected and incorporated into the Company's stock price during the Class Period.

50.    As a result of the foregoing, the market for Lime Energy's common stock promptly digested current information regarding Lime Energy from all publicly available sources and reflected such information in Lime Energy's stock price. Under these circumstances, all purchasers of Lime Energy's common stock during the Class Period suffered similar injury through their

purchase of Lime Energy's common stock at artificially inflated prices, and a presumption of reliance applies.

## ECONOMIC LOSS/LOSS CAUSATION

51. The market for Lime Energy's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Lime Energy's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired Lime Energy's common stock relying upon the integrity of the market price of Lime Energy's securities and market information relating to Lime Energy, and have been damaged thereby.

52. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Lime Energy's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

53. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Lime Energy's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Lime Energy and its business, prospects and operations, thus causing the Company's

common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## NO SAFE HARBOR

54. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Lime Energy who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Lime Energy's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

57.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Lime Energy's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Lime Energy as specified herein.

59.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Lime Energy's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the

statements made about Lime Energy and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Lime Energy's securities during the Class Period.

60. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

61. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Lime Energy's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by

Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

62.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Lime Energy's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Lime Energy's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Lime Energy securities during the Class Period at artificially high prices and were or will be damaged thereby.

63.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Lime Energy's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Lime Energy securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

64.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

66.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Lime Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

69.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.    As set forth above, Lime Energy and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

71.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

72.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)  Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: August 2, 2012

By: */s Patrick V. Dahlstrom*

Patrick V. Dahlstrom
Leigh Handelman Smollar
Joshua B. Silverman
Louis C. Ludwig
**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:      (312) 377-1181
Facsimile:      (312) 377-1184

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence Rosen, Esq.
350 Fifth Avenue, Suite 5508
New York, NY  10118
Phone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Lime Energy Co., Inc. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Lime Energy Co., Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First Name:  William

Middle Initial:  H

Last Name:  Edwards

Mailing Address:  REDACTED

City:  REDACTED

State:  REDACTED

Zip Code:  REDACTED

Country:  REDACTED

Phone:  REDACTED

Email:  REDACTED

Are you a current or former employee of the company? no

The Plaintiff Certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

**Shares Purchased**

| Type of Security | Buy Date | # of Shares: | Price per Share |
|---|---|---|---|
| Common Stock | 2012-05-04 | 1000 | 2.70 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. none

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: Yes

I intend to sign and execute this agreement and retain the Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis: Yes

Date of signing [07/17/2012]